IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. 07-cv-00721-JLK

**MPEG LA, L.L.C.**,

        Plaintiff,

v.

**REGENCY MEDIA PTY LTD.,
AAV REGENCY PTY, LTD., and
AAV REGENCY MANAGEMENT PTY LTD.**,

        Defendants.
_____

**ORDER ON MOTION TO DISMISS**
_____

Kane, J.

This is a diversity action for breach of contract brought by plaintiff MPEG LA, L.L.C. ("MPEG") against defendants Regency Media Pty Ltd. ("Regency") and AAV Regency Pty Ltd. and AAV Regency Management Pty. Ltd (collectively, "AAV Entities"). Defendants have moved to dismiss the amended complaint for lack of personal jurisdiction and based on the doctrine of *forum non conveniens*. The AAV Entities additionally move to dismiss the complaint as against them for failure to state a claim. For the reasons stated below, I grant Defendants' motion.

Background

Plaintiff MPEG is a Delaware company that has its headquarters in Colorado. According to its website, MPEG also has offices in Maryland, London, Tokyo and Shanghai. MPEG's business is administering standardized package licenses for use of patents held by various private companies and research institutions. As relevant here, it offers the MPEG-2 Patent Portfolio

license ("MPEG-2 License").  MPEG asserts this standardized license grants sublicenses to over 800 MPEG-2 patents issued in more than 50 countries that are essential to making or selling products that store or transmit video information meeting the international standard known as MPEG-2 video compression technology ("MPEG-2 Standard").  Products complying with the MPEG-2 Standard include DVD discs.

Defendant Regency Media Pty Ltd., formerly known as Regency Recordings Pty Ltd., is an Australian company that mass produces or "replicates" DVD discs in Australia for major film studios.  The DVD discs produced by Regency are then marketed and distributed in Australia and New Zealand by the film studios.

The Defendant AAV Entities are both Australian companies founded in 2003 as a joint venture between Regency and AAV Ltd., a publically held Australian company.  In July, 2006, Regency purchased AAV Ltd.'s 51% interest in the AAV Entities.  Regency reports both AAV Entities are currently subsidiaries of Regency.

In a letter dated July 2, 2001, Lawrence A. Horn, MPEG's Vice-President for Licensing, notified Fiona Horman, Regency's Managing Director, that Regency's DVD replication business infringed on the MPEG-2 patents administered by MPEG and threatened suit unless Regency entered into the standardized MPEG-2 License agreement.  Regency reports that it was skeptical of MPEG's infringement claim, but after a period of negotiation it agreed to enter into the MPEG-2 License agreement ("Agreement") with MPEG.  The Agreement was executed and became effective in February, 2002.

In general, the Agreement grants Regency a sublicense for all patents in the MPEG-2 Patent Portfolio in return for Regency's payment of royalties upon the sale of each copy of "MPEG-2 Packaged Medium," *e.g.*, DVD discs, "manufactured or sold in a country in which one

2

or more MPEG-2 Patent Portfolio Patent(s) that would be infringed absent a license thereunder, is in force." Agreement, § 3.1.6. MPEG asserts that its MPEG-2 Patent Portfolio includes 18 Australian patents that are essential to the MPEG-2 Standard and practiced by Regency in its manufacture of DVD discs.

As relevant to the issues presented by Defendants' motion, the Agreement requires Regency to make royalty payments to MPEG and provide MPEG with statements regarding its royalty calculations, but does not specify where these payments and statements are to be submitted. The only references in the Agreement to any MPEG locations are its identification of MPEG as a limited liability company of Delaware having its principal place of business in Denver, Colorado and its requirement that Regency send any notices concerning the Agreement to MPEG at its Colorado office and that Regency provide its customers with a notice identifying MPEG at its Colorado office. The Agreement does not include a forum selection clause, but provides that its validity, construction and performance is governed by the substantive law of the state of New York.

All of the parties' negotiations preceding the February 25, 2002 Agreement took place by telephone, fax and email between Ms. Horman in Australia and Mr. Horn in MPEG's Maryland office. The letterhead utilized by Mr. Horn in some of this correspondence also identified Denver, Colorado as MPEG's world headquarters.

At the close of the parties' pre-contract negotiations, MPEG directed Regency to send the executed Agreement to MPEG's Colorado office, and Regency complied.[1] Shortly after the

---

[1] Regency executed the Agreement in Australia and was the final signatory to the Agreement.

Agreement was executed, MPEG transmitted a pre-arranged "side agreement" to Regency from its Colorado office.

At some point after execution of the Agreement, MPEG directed Regency to submit royalty statements to MPEG's Colorado office and royalty payments to an MPEG bank account in Colorado. Regency complied with this request, and ultimately made six royalty payments, totaling nearly $195,000, to MPEG through MPEG's Colorado bank. During this period, MPEG representatives in MPEG's Colorado office also engaged in email and other correspondence with Regency's Chief Financial Officer regarding Regency's royalty obligations under the Agreement.

Early in 2003, Regency notified MPEG that it had learned many of its competitors were not licensed by or paying royalties to MPEG for their replication of DVDs. On or about August, 2003, Regency also ceased submitting royalty statements and payments to MPEG.

In January, 2005, Regency Managing Director Horman wrote Mr. Horn, in MPEG's Maryland office, to inform him that upon review of the Australian patents in the MPEG-2 Patent Portfolio and its DVD manufacturing process, the company had determined that it did not utilize any of the Australian patents in the MPEG-2 Patent Portfolio in its replication of DVDs and thus that no royalties were due under the Agreement. Further, Ms. Horman sought clarification regarding which of its Australian patents MPEG believed were infringed by Regency, and notified MPEG that it would continue to withhold royalty payments until this question was resolved. Ms. Horman wrote this and follow-up correspondence with MPEG on letterhead for "AAV Regency," identified on the letterhead as AAV Regency Pty Ltd. and AAV Regency Management Pty Ltd. She also identified herself as AAV Regency's Managing Director or President in this correspondence.

Ms. Horman's January 2005 letter triggered emailed and faxed responses from Mr. Horn and other MPEG representatives in MPEG's Maryland office. Shortly thereafter, MPEG representatives from MPEG's Colorado office began emailing reminders regarding Regency's alleged royalty obligations to Ms. Horman in Australia. These reminders included instructions to submit royalty statements to MPEG's Colorado office, but to remit royalty payments by wire transfer to an MPEG account in a San Francisco bank. This pattern of mutual correspondence between Regency and MPEG's Maryland-based representatives and mostly unilateral communications from MPEG's Colorado-based representatives to Regency continued through March of 2007.

MPEG filed this breach of contract action in the United States District Court for the District of Colorado on April 6, 2007. Shortly before and after suit was filed, at Defendants' request, Regency and AAV Regency Managing Director Horman met with MPEG representatives in California in an unsuccessful effort to resolve the parties' dispute. In June, 2007, Regency filed suit in Australia against Sony Corporation, one of MPEG's members and patent holders, seeking a declaration of non-infringement and revocation of certain Sony-held Australian patents included in the MPEG-2 Patent Portfolio.

Outside of the Agreement with MPEG and the related activities described above, Regency and the AAV Entities have no contacts with Colorado. None of them have any physical presence in the state: no offices, employees, or property. Nor do they have any Colorado bank accounts or telephone numbers, and none of them advertise or sell products in the state or solicit business here.

Discussion

I.  Personal Jurisdiction

   A.  Legal Standard

MPEG, as the plaintiff, bears the burden of establishing personal jurisdiction over each of the defendants.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  At this preliminary stage of litigation, however, the plaintiff's burden is light.  *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008).  On a motion to dismiss decided without an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."[2]  *Id.* at 1056-57 (quoting *OMI*, 149 F.3d at 1091).

"The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *Id.* (quoting *OMI*, 149 F.3d at 1091).  In determining whether the plaintiff has made the requisite showing, I must take as true the well-pled allegations in the complaint, as distinguished from "mere conclusory allegations," to the extent these allegations are uncontroverted by the defendant's affidavits.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  If the parties present conflicting affidavits, I must resolve all factual disputes in the plaintiff's favor.  *Id.*  Once the plaintiff has made a prima facie showing of jurisdiction, this showing is sufficient notwithstanding a contrary presentation by the moving party.  *Id.*

"To obtain personal jurisdiction over a non-resident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the

---

[2]   None of the parties requested an evidentiary hearing.

6

exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (internal quotation omitted). The Colorado Supreme Court has interpreted Colorado's long-arm statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *id.*; *Keefe v. Kirschenbaum & Kirschenbaum*, 40 P.3d 1267, 1270 (Colo. 2002). Accordingly, to determine if jurisdiction over a non-resident defendant is proper under both Colorado's long-arm statue and the Fourteenth Amendment, I need only determine whether the exercise of personal jurisdiction over each defendant comports with the Due Process Clause. *See AST*, 514 F.3d at 1057; *Keefe*, 40 P.3d at 1270.

This inquiry has two steps. First, I must determine whether the defendant has "minimum contacts" with the forum state such "'that he should reasonably anticipate being haled into court there.'" *AST*, 514 F.3d at 1057 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This requires a showing that "the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State,'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)), so that it is not subject to the laws of a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts" or "the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (internal quotations omitted). Thus, where a defendant "deliberately has engaged in significant activities within a State or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Id.* at 475-76 (internal citations and quotations omitted).

7

Consistent with this framework, the minimum contacts standard can be met by establishing either that the non-resident defendant has continuous and systematic contacts with the forum state (general jurisdiction) or that the defendant (i) has purposefully directed activities at forum residents or otherwise acted to avail itself purposefully of the privilege of conducting activities there and (ii) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction). *See Benton*, 375 F.3d at 1075; *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). In this case, MPEG asserts specific jurisdiction exists.

If sufficient minimum contacts to support personal jurisdiction are shown in this first step of analysis, the Due Process Clause further requires that I consider whether the exercise of personal jurisdiction over the defendant would nonetheless offend traditional notions of fair play and substantial justice. *AST*, 514 F.3d at 1057; *see Benton*, 375 F.3d at 1078. This inquiry examines "whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *Benton*, 375 F.3d at 1078. If the plaintiff has made a prima facie showing of sufficient contacts with the forum jurisdiction, the defendant seeking to defeat jurisdiction ordinarily must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005). The weaker the plaintiff's showing on minimum contacts, however, "the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *OMI*, 149 F.3d at 1093 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994).

B.  Personal Jurisdiction over Regency

With respect to the first step in the personal jurisdiction analysis, MPEG asserts the existence of the Agreement alone, including its "mandate" that Regency submit regular royalty payments and statements to MPEG in Colorado, created a continuing obligation by Regency to MPEG, a Colorado resident, that constitutes sufficient contacts with Colorado for this court to exercise personal jurisdiction over Regency. In support of this assertion, MPEG relies principally on dicta in a 1982 decision by this court, *Ruggieri v. General Wells Service, Inc.*, 535 F. Supp. 525, 532 (D. Colo. 1982), that personal jurisdiction exists "when a defendant executes, outside of the forum state, a contract which specifically obligates him to pay money to one inside the forum."[3]

MPEG's assertion of sufficient minimum contacts based on these facts and authority fails for at least two reasons. First, the Agreement does not in fact specify that Regency submit royalty payments and statements to MPEG in Colorado. Rather, the Agreement is silent on the location or locations to which these submissions were to be made, thus allowing MPEG to determine whether these payments and statements should be submitted to its Colorado office, one its other offices or some other location entirely. MPEG's discretion in this regard is demonstrated by MPEG's 2005 communications directing Regency to submit royalty payments to a non-

---

[3] MPEG also relies on *Cudd Pressure Control, Inc. v. Cornelius*, No. 95-6263, 1996 U.S. App. LEXIS 4933 (10th Cir. Mar. 20, 1996), for this proposition. Under the Tenth Circuit's rules, however, as clearly stated in the decision itself, this order and judgment is not binding precedent. *See id.*, *1 fn.*. Even it were of some precedential value here, the language cited by MPEG was not relied upon by the Tenth Circuit. *See* Pl.'s Resp. (Doc. #19) at 9 (citing *Cudd*, 1996 U.S. App. LEXIS 4933, *5 (reporting basis of district court's decision)). In addition, the quantity and nature of the defendant's contacts with the forum state in *Cudd* are easily distinguished from those here.

Colorado location, its San Francisco bank. For this reason alone, MPEG may not rely on *Ruggieri* to support personal jurisdiction over Regency.[4]

Second, as the Supreme Court has declared, the existence of a contract between a defendant and a plaintiff does not automatically establish minimum contacts in the plaintiff's home forum. *See Burger King*, 471 U.S. at 478. Instead, the contract is "'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" *Id.* at 478-79 (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316 (1943)). "It is these factors - prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing - that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479; *see AST*, 514 F.3d at 1058.

Evaluating these factors, I find Regency did not purposefully establish minimum contacts within Colorado. It was MPEG, not Regency, that initiated contact with Regency in Australia and solicited it to enter into the Agreement or risk a patent infringement suit against it. All of the pre-contract communications between Regency and MPEG took place between Regency's representatives in Australia and MPEG representatives operating outside of Colorado. Because the Agreement did not specify where Regency was to direct its royalty statements and payments, it was MPEG's decision that Regency submit one or both of them to its Colorado office. This post-contract decision by MPEG in turn dictated that at least some of Regency's post-contract

---

[4] In addition, the statement MPEG relies upon from *Ruggieri* is based on cases involving contracts in which the sole contractual obligation was the payment of money, *i.e.*, promissory notes, guarantees, letters of credit and the like. *See Ruggieri*, 535 F. Supp. at 532 (citing cases). The *Ruggieri* statement does not, therefore, stand for the broad proposition that personal jurisdiction over a non-forum resident is created any time the non-forum resident enters into a contract with a forum resident and makes payments pursuant to the contract in the forum.

communications regarding these statements and payments would be directed to MPEG's Colorado office. For most of its substantive post-contract communications regarding the Agreement, however, Regency continued its dealings with Mr. Horn and other MPEG representatives who operated outside of Colorado.

Regency's only contacts with Colorado, therefore, resulted from MPEG's unilateral direction that Regency submit its royalty payments and/or statements here. Contacts based on a unilateral act of the plaintiff are not sufficient to create jurisdiction. *See, e.g.*, *Burger King*, 471 U.S. at 475; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (forum contacts resulting from unilateral activity of another party not attributable to defendant for jurisdictional purposes); *see also Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 109 (1987) (jurisdiction is proper when plaintiff's claim arises out of or relates to "actions by the defendant *himself* that create a substantial connection with the forum state;" emphasis in original).

It is true, as MPEG asserts, that Regency had notice at the time in entered into the Agreement that MPEG was headquartered in Colorado and also that, if the need arose, Regency should send notices concerning the Agreement to MPEG's Colorado office. This prior knowledge of MPEG's presence in Colorado, however, does not establish "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475.

In *Automated Quill, Inc. v. Chernow*, 455 F. Supp. 428, 432 (D. Colo. 1978), this court considered a similar factual scenario, in which a Colorado resident corporation, as licensor, entered into a license agreement with a non-resident corporation pursuant to which the non-resident licensee was to make payments to the Colorado resident. The non-resident licensee and related defendants had no other contacts with Colorado:

11

> Defendants did not come into Colorado for either negotiations or
> execution of the licensing agreement in question; they did not
> initiate any activity peculiar to Colorado which was undertaken on
> defendants' behalf; the licensing agreement in question was not
> issued in conjunction with any other Colorado activity; the
> defendants' activities as licensees are not specifically directed to
> Colorado; there is no evidence that defendants maintain an agent
> within the State of Colorado, a place of business, employees, a
> bank account, any subsidiaries which do business within the state,
> exercise ownership over any real or personal property within the
> state, nor enter into any contract in the state or any contract to be
> performed within the state.

*Id.* at 432. Under these circumstances, the court dismissed the Colorado licensor's breach of contract suit, holding "[i]t is only too evident that defendants have not personally availed themselves of the privilege of conducting activities in Colorado." *Id.* The same is true in this case.

Absent such purposeful availment (or consent by Regency to suit in Colorado), I cannot find that Regency should have reasonably anticipated being haled into court here. *See Worldwide Volkswagen*, 444 U.S. at 297. As a result, I find MPEG has failed to make a prima facie showing that Regency had sufficient contacts with Colorado for this court to exercise personal jurisdiction over it.[5]

C. Personal Jurisdiction over AAV Entities

In light of my ruling that Regency has insufficient contacts with Colorado to create personal jurisdiction in this court, I need not reach MPEG's argument that jurisdiction over the

---

[5] Because I find Regency lacks the requisite minimum contacts with Colorado to create personal jurisdiction here, I need not reach the second step of the jurisdictional analysis, which is whether exercising personal jurisdiction over Regency would offend traditional notions of fair play and substantial justice under the balancing test set forth in *OMI* and other cases. *See, e.g.*, *OMI*, 149 F.3d at 1095. I note, however, that Defendants made a strong showing under this test that subjecting them to suit in Colorado would be unreasonable and inconsistent with the notions of fair play and substantial justice.

AAV Entities exists because they are either agents or alter egos for Regency and thus are subject to the court's jurisdiction to the same extent as Regency.

On the current record, the AAV Entities' only arguable independent contact with Colorado is a single letter on "AAV Regency" letterhead, dated May 20, 2005, that was faxed from Ms. Horman in Australia to an MPEG representative in Colorado in response to a letter from MPEG's Colorado office demanding payment of royalties under the Agreement. *See* Decl. of Terra Hardcastle in Support of Pl.'s Resp. (Doc. #22), Ex. H. Needless to say, this contact is insufficient to establish personal jurisdiction in Colorado over either AAV entity.

As a result of my decision that personal jurisdiction is lacking as to all three Defendants, I do not reach the Defendants' *forum non conveniens* argument or the AAV Entities' separate contention that MPEG failed to state a claim against them.

For the reasons stated above, Defendants' Motion to Dismiss (Doc. #13) is GRANTED. The Complaint is DISMISSED as against all Defendants.

IT IS SO ORDERED this 31st day of July, 2008.

s/ John L. Kane  
John L. Kane, Senior District Judge  
United States District Court